## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DENIS E. SPECTOR, et al.,           :
     Plaintiffs,                           :
                           :
v.                                           :           CIVIL ACTION NO.
                           :           3:06-cv-129(JCH)
BOARD OF TRUSTEES OF          :
COMMUNITY-TECHNICAL          :
COLLEGES; et al.,
     Defendants.                          :           NOVEMBER 29, 2006

### RULING RE: DEFENDANTS' MOTION TO DISMISS (DOC. NO. 27)

The plaintiffs, Dennis E. Spector and James A. Crowley, bring this action against the defendants, the Connecticut Board of Trustees of Community-Technical Colleges ("CTC Board of Trustees"), Naugatuck Valley Community College ("NVCC"), Richard Sanders, Patricia Bouffard, Mitchell Holmes, Arthur Dubois, Joseph Cistulli, Edward Connole, William Rimick, and Arian Gorishti, under 42 U.S.C. §§ 1983, 1985, and 1986; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; Article First §§ 3 and 20 of the Connecticut Constitution, Connecticut General Statutes §§ 31-51q, 52-571b; and Connecticut common law. As stated in the Complaint, this action is based upon the defendants' alleged attempts to infringe upon the free exercise of religion and academic expression by Crowley.

The defendants have moved for a partial dismissal of the plaintiffs' claims pursuant to Rule 12(b)6 of the Federal Rules of Civil Procedure. For the reasons stated below, the defendants' motion is granted in part and denied in part.

I.      **BACKGROUND**[1]

    A.      **Parties**

Spector is a Connecticut resident who, at all times relevant to this action, was employed by NVCC and the CTC Board of Trustees as the Coordinator of the Marketing Department in NVCC's Business Division.  Spector is also a tenured professor at NVCC.  Since 1990, he has held the positions of Adjunct Instructor, Instructor, Assistant Professor, and, by appointment in 1999, Full Professor.  Crowley, also a Connecticut resident, was employed by NVCC and the CTC Board of Trustees as a professor in the Marketing and Business Management Department in NVCC's Business Division.  Now tenured, Crowley has taught at NVCC since 1971 as an Instructor, Assistant Professor, Associate Professor, and, by appointment in 2002, Full Professor.  Spector is Crowley's direct supervisor in the Marketing department.  As such, Spector is responsible for evaluating Crowley's job performance.

The CTC Board of Trustees, established pursuant to state statute, administers Connecticut's twelve public, community-technical colleges.  NVCC is one of the twelve community-technical colleges organized by the State of Connecticut under the supervision of the CTC Board of Trustees.  NVCC maintains a Public Safety Department ("Public Safety") comprised of sworn police officers having full police powers.

Sanders is the President of NVCC.  Dean Bouffard has served as the NVCC

---

[1]The court takes the facts alleged in the the Complaint as true, as it must, and draws all inferences in the plaintiffs' favor.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

Academic Dean since Summer 2001.  Cistulli was the Academic Dean at NVCC from 1980 to 2001.  Holmes is the Director of NVCC's Business Division, and, in this capacity, he is Spector's direct supervisor in the Business Division.  DuBois is NVCC's Director of Human Resources and Labor Relations.  Connole is the Director of the NVCC Public Safety Department.  Rimick is a public safety officer in the NVCC Public Safety Department.  Gorishti is also a public safety officer in the NVCC Public Safety Department.

**B.    Facts[2]**

1.    Denial of Crowley's Application for Promotion

In 1998, Professor Crowley was ordained as a Priest in the Holy Apostolic Church of the East, an Eastern Rite of the Catholic Church.  Since that time, he has served as an Assistant Pastor of St. Thomas Church in New Britain, as the Catholic Chaplain at the Masonic Health Center in Wallingford, Connecticut, and as Police Chaplain for the New Britain Police Department in New Britain, Connecticut.  When Spector became the Coordinator of the Marketing Department in 1998, former Academic Dean Cistulli told Spector that Crowley should have pursued an advanced business degree instead of Crowley's 1995 degree in divinity from Holy Apostle College and Seminary.

In October and November 2000, Spector evaluated Crowley's job performance, both as part of Crowley's triennial evaluation and his application for promotion from Associate Professor to Professor for the 2000-2001 academic year.  One portion of the

---

[2]The events described herein are taken from the Complaint.

evaluation involved Spector observing Crowley's performance in a Business Organization class on October 31, 2000.  Director Holmes joined Spector in observing Crowley's Business Organization class.  Holmes, who had been recently appointed the Director of the Business Division, said that he wished to accompany Spector in order to become more familiar with the department's faculty.  Holmes also stated that he did not intend to conduct his own evaluation of Crowley.  After observing the class, Spector, in accordance with his normal practice, drafted a classroom evaluation.

In a series of meetings following the October 31, 2000 evaluation, Holmes told Spector that Spector's positive evaluation of Crowley's classroom instruction was incorrect, although Holmes did not identify anything about Spector's evaluation that was inaccurate.  Holmes did, however, indicate to Spector that Holmes had received unfavorable comments about Crowley from unidentified individuals.  Holmes subsequently pressured Spector to change the evaluation.

Spector provided Holmes with an "Overall Performance Review" dated November 15, 2000, which evaluated Spector's performance during the Fall 2000 semester.  Spector's review recommended a rating of "excellent" for Crowley.  At some point, presumably upon receiving Spector's recommendation, Holmes remarked to Spector that he was uncomfortable referring to Crowley as "Father," and that Crowley's clerical clothing "overwhelmed" the students in the classroom.[3]  The student evaluations of Crowley from four classes he taught during the Spring 2000 semester rated Crowley in the top five percent of NVCC faculty members.

_____

[3]The plaintiffs maintain that Crowley never asked or required anyone to refer to him as "Father," although some (at NVCC) did choose to refer to him as "Father Crowley."

In further accordance with the evaluation process, Holmes, Spector, and Crowley met together on November 15, 2000.  At this meeting, Holmes pulled his chair within inches of Crowley and aggressively attacked Crowley's dominating "presence" in class. Holmes focused especially on Crowley's wearing of clerical clothing and use of "Catholic" examples in his business ethics class.  After twenty minutes, Spector asked to terminate the meeting because of Holmes' abusiveness.

At Crowley's request, Holmes agreed he would not forward his recommendation letter addressing Crowley's promotion application for final decision until Crowley and Holmes met regarding the promotion application.  Despite Holmes' assurances to the contrary, Holmes forwarded Crowley's recommendation on or about November 28, 2000, without attempting to schedule a meeting with Crowley.  Holmes' recommendation was comparatively more negative than Spector's review.  The plaintiffs alleged that Holmes met with the other three Business Division candidates for promotion prior to forwarding their recommendation letters for final decision.

On numerous occasions, Spector requested recommendations from Holmes to improve the aspects of Crowley's performance that resulted in Holmes' negative recommendation for Crowley's promotion.  However, Holmes never provided such recommendations.  Holmes instead told Spector that he would no longer discuss Crowley's performance with Spector unless Crowley was present.  Holmes did not prohibit discussion between him and any of the other seven department coordinators of the Business Division about the job performance of a faculty member under their supervision.

Crowley met with President Sanders on a number of occasions prior and

subsequent to the university's promotion announcements and complained about the comments and treatment by Holmes and former Dean Cistulli. All of these meetings occurred after March 21, 2001. During one of these meetings, Crowley, with Spector, Personnel Director DuBois and Crowley's Union representative present, specifically told Sanders that he had been discriminated against, in part, based on his status as a Catholic priest. Prior to this meeting, Cistulli had confronted Crowley in the hall outside Sanders' office and told Crowley that he would never be promoted. In April 2001, Sanders denied Crowley's promotion from Associate Professor to Professor.

### 2.   Adjustment of Crowley's Class Schedule

Around July or August 2001, Holmes adjusted Crowley's class schedule in advance of the normal period for class schedule adjustment. Holmes' adjustment resulted in an onerous class schedule for Crowley, who had been absent on medical leave for most of the Spring 2001 semester. Crowley's schedule had been consistent with other faculty members' class schedules before the adjustment. In addition to giving Crowley a more difficult class schedule to manage, Holmes also dropped Crowley from teaching two classes traditionally filled by student enrollment and required for graduation in the Horticulture and Human Services Program.

Once Spector learned of Crowley's altered class schedule, he forwarded a three page memorandum to Holmes, dated September 16, 2001, requesting an investigation of the discrimination against Crowley. The letter indicated, *inter alia*, that the premature adjustment of Crowley's schedule appeared to be a continuation of the discriminatory actions that had commenced against Crowley in the Fall 2000 semester. In addition to Spector's letter, Crowley verbally complained to Holmes about the burden placed on

him by the new class schedule.

### 3.   Crowley's Promotion and Agreement with the Board of Trustees

On November 15, 2001, Crowley filed an Affidavit of Illegal Discriminatory Employment ("CHRO Complaint) with the Connecticut Commission on Human Rights and Opportunities ("CHRO") against the CTC Board of Trustees.  At some point during the Fall 2001 semester, Crowley applied again for promotion from Associate Professor to Professor for the 2001-2002 academic year.  For this application, Holmes submitted a detailed, positive promotion recommendation to Sanders dated December 14, 2001. Holmes' 2001 letter was decidedly more positive than his previous 2000 letter, even though, according to the plaintiffs, Spector did not notice any changes in Crowley's performance, Crowley had not sought to alter his performance, and there was no additional evaluation of Crowley subsequent to the 2000 evaluation.

In April 2002, Crowley was promoted to the position of Professor.  Additionally, Crowley and the CTC Board of Trustees entered into an Agreement and Release dated April 15, 2003, which stated, *inter alia*, that the CTC Board of Trustees acknowledged and would "continue to comply with the various state and federal laws that prohibit discrimination, and prohibit retaliation for the filing of employment discrimination complaints."  Complaint at ¶ 86.

### 4.   Spector's Traffic Stop and Workplace Violence Investigation

On December 11, 2001, Spector exited a deserted campus parking garage at approximately 8:00 P.M.  At that time, Officers Rimick and Gorishti, who were parked in the woods in separate cars, stopped Spector for failing to stop for a stop sign.  The officers proceeded to search Spector's vehicle and issue him a traffic warning.

The next morning, Lt. Connole contacted Sanders and demanded that Spector be punished for the previous nights' incident.  Sanders declined to impose such punishment.  On December 12, 2001, Connole sent an allegedly false email to Sanders, copied to Dean Bouffard, Colwell, DuBois, Holmes, and Kelly Masi, accusing Spector of, among other things, threatening, cursing, belligerency, and abusive behavior toward Rimick and Gorishti.  Five days later, Gorishti drafted a two page incident report describing the incident as "Disorderly Behavior."  Complaint at ¶ 95.  Fifteen days after the December 11, 2001 vehicle stop, Rimick drafted a separate two page supplementary incident report also charging Spector with "Disorderly Behavior."

Following these two reports, DuBois, upon authorization from Sanders, commenced a Workplace Violence Investigation against Spector.  Dubois then demanded that Spector submit a written statement regarding the December 11, 2001 incident.  However, Dubois did not inform Spector that Spector would be making this statement pursuant to an investigation.  Likewise, Holmes, Bouffard, Sanders, and Connole all failed to inform Spector that he was under investigation, even though each was allegedly aware of the fact that an investigation was underway and each had requested that Spector submit a written statement concerning the December 11, 2001 incident.

The requests of DuBois, Sanders, and Connole for a statement from Spector became increasingly threatening by their number and aggressive character.  This escalation lead Spector and his Union representative to request a meeting with DuBois to discuss the purpose of the requests.  On December 20, 2001, DuBois met Spector outside the NVCC Mainstage Theatre.  In the presence of Crowley, DuBois informed

Spector that he was being investigated for workplace violence including, but not limited to, the December 20, 2001 incident.  DuBois also instructed Spector that he was to meet with the CTC Board of Trustees's attorney to be deposed concerning Crowley's November 15, 2001 CHRO Complaint.  The next day, Spector and his Union Representative met with DuBois and Holmes to discuss Spector's statement.

Spector rendered a statement concerning the December 11, 2001 incident on January 28, 2002.  Upon receiving the statement, DuBois wrote a memorandum to Spector that accused Spector of not being forthcoming to the demands for a statement. The memo also stated that the conduct for which Spector was being investigated might constitute a violation of a Gubernatorial Executive Order and the CTC Board of Trustees' policy on Workplace Violence.  DuBois then referred Spector to the Employee and Family Assistance Program (EAP) for mental health counseling. When Spector disputed the content of DuBois' memo, DuBois again recommended EAP counseling and accused Spector of libel.

5.    Defendants' Refusal to Investigate False Claims Against Spector

At the time of the workplace violence investigation, Spector served as the Recording Secretary for the NVCC Promotion Committee.  During Promotion Committee proceedings on February 12, 2002, members of the committee accused Spector of acting as legal counsel for Crowley in an alleged lawsuit by Crowley against the Promotion Committee for denying Crowley's application for the 2000-2001 academic year.  The members based their statements on anonymous phone calls one or more of them had received that accused Spector of taking notes of Promotion Committee meetings to use in Crowley's alleged lawsuit.  The plaintiffs maintain that no

such lawsuit was ever filed, and that Spector never represented Crowley.  Regardless, the Promotion Committee relieved Spector of his position and duties as Recording Secretary.

After losing his position as Recording Secretary, Spector requested that DuBois investigate the false allegations made against him.  Through questionnaires submitted by Sanders, each member of the Promotion Committee denied being contacted concerning Spector's representation of Crowley in a lawsuit against the 2000-2001 Promotion Committee.  Sanders refused to investigate the matter further, even though Spector indicated to Sanders that Holmes, who was Crowley's supervisor and very familiar with Crowley's CHRO Complaint, was the source of the anonymous phone calls.

Spector filed a CHRO Complaint on April 8, 2002, alleging discriminatory retaliation arising both from his written statement to the CHRO concerning Crowley's November 14, 2001 CHRO Complaint and Spector's statements to Holmes, DuBois, Cistulli, Bouffard, and Sanders concerning discrimination against Crowley.  In April 2004, Sanders and DuBois declined Spector's request to investigate and reprimand Lt. Connole for publicly displaying in the NVCC cafeteria an investigative file concerning Spector's December 11, 2001 vehicle stop.

      6.    <u>Defendants' Interruption and Monitoring of Plaintiffs' Classes</u>

On October 3, 2002, an NVCC student approached Crowley in apparent mental distress and expressed an intent to harm herself.  Crowley called Public Safety's emergency line to request assistance.  Rimick responded to the call and transported the student to the Public Safety Department.

About forty-five minutes after Crowley began his 5:30 P.M. class that day, a Sergeant Rinaldi summoned Crowley to the Public Safety Department because the student was reportedly beyond control.  The student refused to ride in an ambulance and, since the NVCC police officers told Crowley that they were not permitted to leave the NVCC campus, Crowley agreed to drive the student to Bristol Hospital.

Around October 16, 2002, Crowley attempted to report personally to Rimick about what happened when Crowley transported the student to the hospital.  Rimick refused to speak with Crowley, stating that Connole had advised NVCC police officers not to communicate with Spector or Crowley.  The next day, DuBois sent a letter to Crowley accusing him of providing personal counseling to one or more students at NVCC.  Crowley asserts that he only counseled students in his capacity as a faculty member and advisor to the Alpha Beta Gamma Honor Society.  DuBois never responded to Crowley's request for additional information regarding these charges.

On October 24, 2002, Rimick arrived unannounced at one of Crowley's classes.  Rimick told Crowley's students to leave, then proceeded to interrogate Crowley about the October 2, 2002 incident involving the student in distress.  Rimick asked Crowley a number of irrelevant questions about Crowley's decision to become a Priest.  During this interrogation, Spector, who had the next class scheduled to begin in the same classroom, arrived.  When Spector entered to request use of the classroom, Rimick told him to leave.  Rimick ended the interrogation fifteen minutes later.

Beginning in October 2002 and continuing through Spring 2005, Public Safety conducted surveillance of Crowley's classes.  Despite Crowley's complaints to Holmes, the surveillance continued.

On or about November 18, 2002, Connole allegedly told his police officers that he wanted Crowley and Spector charged with and arrested for a crime.  Between November 2002 and October 2003, Crowley and Spector made numerous requests to Sanders and DuBois for an investigation of Connole's statement.  Eventually, Sanders informed Crowley and Spector that the investigation into Connole's statements was closed and that the claims were unsubstantiated.

Crowley and Spector also requested an investigation of Rimick's October 24, 2002 disturbance of the professors' classroom, which disturbance they believed was in retaliation for the CHRO Complaints that each had pending at the time.  On January 27, 2003, Sanders issued a memorandum concluding that Rimick's behavior on October 24, 2002 did not constitute misconduct or abuse of police authority.  While Sanders interviewed Rimick for this investigation, he did not interview any of the students present, Crowley, Spector, or the distressed student.

    7. <u>Bouffard's Continuation of the Discriminatory/Retaliatory Conduct</u>

In their Complaint, the plaintiffs also allege that Bouffard commenced a campaign of harassing and retaliatory conduct when she replaced former Academic Dean Cistulli in Summer 2001.  For example, they allege that Bouffard has moved Crowley and Spector into the same office, when having a department coordinator sharing an office with a department faculty member is unprecedented at NVCC.  Also, the plaintiffs allege that Bouffard has placed unfounded letters of reprimand and counseling into Spector's personnel file, which were deleted when Spector challenged their truthfulness.

## II.     STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1994).  In considering such a motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).  In addition, Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

"In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and review all allegations] in the light most favorable to the non-moving party."  Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996).  "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."  Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

## III.     DISCUSSION

In their Motion to Dismiss, the defendants attack the Complaint on the following grounds: 1) lack of subject matter jurisdiction for failure to exhaust administrative

remedies as to Crowley's Title VII claims in Count One-B and Count Three; 2) failure to state a claim as to Spector's Title VII retaliation claim in Count Three; 3) an Eleventh Amendment bar to the plaintiffs' claims under 42 U.S.C. §§ 1983, 1985, and 1986 against the CT Board of Trustees and against the defendants in their official capacities in Counts One-A, Two, Four, and Five; 4) failure to state a claim under 42 U.S.C. §§ 1985 and 1986 in Counts One-A, Two, Four, and Five; 5) a partial statute of limitations bar for plaintiffs' claims under 42 U.S.C. §§ 1983, 1985, and 1986 in Counts One-A, Two, Four, and Five; 6) a complete statute of limitations bar for plaintiffs' claims under 42 U.S.C. §§ 1983, 1985, and 1986 for abuse of criminal process and denial of due process in Count Two and Count Five; 7) lack of a private right of action under Article First, Sections Three and Twenty of the Connecticut Constitution on Count One-C and Four; 8) lack of standing to make a claim pursuant to Conn. Gen. Stat § 5-141d in Count 9; and 9) an absolute testimonial privilege as to plaintiffs' claims for defamation and intentional infliction of emotional distress in Count Seven and Count Eight.

### A.    Exhaustion of Administrative Remedies Under Title VII

Count One-B and Count Three of the Complaint address Crowley's claims under Title VII of the Civil Rights Act of 1964 for, respectively, religious discrimination and discriminatory retaliation.  In their Memorandum in Support, the defendants assert that this court lacks jurisdiction over Crowley's claims for relief under Title VII because Crowley never obtained a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") or a release of jurisdiction letter from the CHRO.  As Crowley did not exhaust his administrative remedies with the EEOC or the CHRO, the defendants'

-14-

claim, he has failed to state an essential element of his Title VII claim.

In response, Crowley concedes that he did not obtain a right to sue letter from the EEOC or a release of jurisdiction letter from the CHRO.  He also acknowledges that he filed this Complaint well beyond the statute of limitations imposed by Conn. Gen. Stat. § 46a-102.  Rather than contest these points, Crowley asserts that the exhaustion requirements are not jurisdictional, but, instead, subject to equitable tolling.  The defendants assert that the plaintiffs have no basis for asserting equitable estoppel, but no longer appear to treat this argument as jurisdictional in their Reply.

As to Crowley's Title VII claims, the Supreme Court has unequivocally held that, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that . . . is subject to waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).  According to the Court, compliance with the filing period is subjected to waiver and tolling as required by equity in order to "honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer."  Id. at 398.  This equity framework also applies when determining whether a Title VII complainant has properly filed a CHRO complaint, rather than an EEOC complaint, since the two are treated the same for Title VII exhaustion purposes.  Lewis v. State of Connecticut Dept. of Corr., 355 F.Supp.2d 607, 615 (D.Conn. 2005).

As the defendants have established without dispute that Crowley did not exhaust his remedies with either the EEOC or the CHRO, the burden is on Crowley to establish the propriety of equitable tolling.  See Boos v. Runyon, 201 F.3d 178, 185 (2d Cir.

2000).  Citing to <u>Zipes</u>, the plaintiffs contend that Crowley's Title VII retaliation and discrimination claims are subject to waiver of the exhaustion requirement because the defendants had prompt knowledge of his claims under circumstances supporting equitable waiver.  Plaintiff's Opposition at 9 (Doc. No. 39).  In making this argument, the plaintiffs split Crowley's allegations into two groups: allegations occurring prior to Crowley's April 15, 2003 Agreement with the CT Board of Trustees, and allegations occurring after the April 15, 2003 Agreement.  The court will address these two groups of allegations in turn.

1.    <u>Pre-Agreement Allegations</u>

The plaintiffs assert that, because the CT Board of Trustees bargained with Crowley for settlement of Crowley's pending CHRO claims, this settlement is sufficient to show that the Board had knowledge of Crowley's potential claims.  Crowley then directs this court to his allegations in Count Six of the Complaint that the CT Board of Trustees breached this settlement by continuing to discriminate and retaliate against him after the April 15, 2003 settlement.  Given the Board's alleged breach, Crowley argues that the burden of requiring him to file another CHRO complaint for the defendants' pre-April 15, 2003 conduct would have been too great considering that he has also brought a breach of contract claim.

Characterizing Crowley's argument as a request for equitable estoppel, the defendants assert that equitable estoppel only applies where the employer has "lulled the plaintiff into believing that it was not necessary for him to commence litigation."  <u>See Dillman v. Combustion Eng'g, Inc.</u>, 784 F.2d 57, 61 (2d Cir. 1986).  The defendants then cite to the Southern District's decision in <u>Avillan v. Potter</u>, for the proposition that

-16-

equity cannot overcome a procedural bar "unless the plaintiff shows that he (1) was unaware of or unable to meet his procedural obligations (2) because of affirmative misconduct on the part of the defendant."  2002 WL 252479 at *3 (S.D.N.Y. 2003). With Crowley having filed a CHRO complaint, the defendants assert that Crowley was certainly familiar with the CHRO process, and that Crowley has not alleged any affirmative misconduct by the defendants that would have prevented him from fulfilling his Title VII procedural obligations.

From the parties' submissions, it is not even clear to the court upon which equitable ground - waiver, estoppel, or tolling - Crowley intends to rely.  While the court has doubts about the substance of Crowley's claims for an equitable lifting of Title VII's procedural requirements, it cannot conclude, as a matter of law, that there are no set of facts provable by Crowley that would entitle him to pursue his pre-April 15, 2003 allegations despite not having brought these claims within Title VII's filing period.

Crowley has also alleged enough to support an inference that the CT Board of Trustees "lulled" him into abandoning his potential claims before the CHRO by entering into the Agreement.  Whether Crowley can ultimately meet his burden of showing that the Board's offer of and subsequent breach of the Agreement amounts to affirmative misconduct, and whether Crowley can further show that this affirmative misconduct caused him to forgo his CHRO claims, is a matter best left to summary judgment.  This conclusion is strengthened by the fact that the exhaustion requirement is "effectively treated as an affirmative defense."  Lewis, 355 F.Supp.2d at 616 (addressing equitable lifting of the exhaustion requirement on a motion for summary judgment) (citing, *inter alia*, Zipes, 455 U.S. at 393 and Boos, 201 F.3d at 182).  Thus, to the extent that

-17-

neither party has attempted to go beyond the pleadings in resolving this affirmative defense, prudence would seem to counsel against deciding the matter before the parties have developed a more complete evidentiary record.  The Motion to Dismiss is denied as to Crowley's pre-April 15, 2003 Title VII claims.

### 2.   Post-Agreement Allegations

For those events that took place after Crowley and the CT Board of Trustees entered into an Agreement, Crowley, having not filed his own CHRO complaint after April 15, 2003, asserts that the Board can be said to have had knowledge of his claims by virtue of Spector's April 8, 2002 CHRO complaint.  Spector's CHRO complaint was amended on February 14, 2004 and April 30, 2005 to reflect additional allegations against the Board.  Crowley's position here is entirely dependent upon the "single filing rule."  The single filing rule is based on the principle that, "where two plaintiffs allege that they were similarly situated and received the same discriminatory treatment, the purposes of the exhaustion requirement are adequately served if one plaintiff has filed an EEOC complaint."  Snell v. Suffolk Cty., 782 F.2d 1094, 1101 (2d Cir. 1986) (citing De Medina v. Reinhardt, 686 F.2d 997, 1013 (D.C.Cir. 1982) (quotations omitted).  In arguing that the single file rule applies to his post-Agreement allegations, Crowley notes that Spector's retaliation and discrimination claims arise from the same discriminatory course of conduct that Crowley experienced.  Again, Crowley also asserts that requiring him to both exhaust his post-Agreement allegations and assert a breach of contract claim would be overly burdensome.

The court finds that Crowley has alleged enough facts with regards to his post-Agreement allegations to allow him to offer evidence on whether Title VII's filing

deadline may be waived under the single filing rule.  In <u>Snell</u>, the one case to which Crowley cites for this proposition, the Second Circuit approved the single file rule where the plaintiffs' Title VII claims "arose out of virtually identical circumstances, thereby rendering additional filings a wholly fruitless endeavor."  782 F.2d at 1101 (quotations omitted).  It is true that, in contrast to <u>Snell</u>, the plaintiffs' Complaint inherently cannot allege that Crowley and Spector were subject to identical types of discrimination and retaliation.  <u>See</u> <u>id.</u>  The discrimination Crowley experienced finds its roots directly in Crowley's religious beliefs, while the discrimination Spector experienced is based on his attempts to defend Crowley against the defendants' alleged misconduct.  More to the point, the actual acts of discrimination and retaliation that the plaintiffs experienced are factually quite distinct.  While Crowley was subjected to, among other things, a denial of promotion and harassing treatment by Public Safety, Spector endured a workplace violence investigation and removal from his position as Recording Secretary of the Promotion Committee.

Still, <u>Snell</u> appears to be concerned less with whether the plaintiffs have identical claims and more with whether the events in question were of a similar nature, took place within the same time period, and, consequently, put the defendants "on notice of discrimination like or reasonably growing out of such allegations."  <u>See</u> <u>id.</u>  Though discovery may reveal that Crowley and Spector's factual claims are not sufficiently related to warrant application of the single file rule to Crowley's post-Agreement allegations, the court cannot conclude as such on the pleadings alone.  The Motion to Dismiss is denied as to Crowley's post-April 15, 2003 Title VII claims.

**B.      Exhaustion of Administrative Remedies Under Conn. Gen. Stat. §
           46a-100**

The defendants also argue that Crowley has not properly exhausted his claims of

discrimination for violations of the Connecticut Fair Employment Practices Act

("CFEPA").   According to the plaintiffs, Crowley's state law claim fails because he has

not obtained a release of jurisdiction letter as required by Conn. Gen. Stat. § 46a-101,

nor did he file the present suit within two years of filing his November 15, 2001 CHRO

complaint, as required by Conn. Gen. Stat. § 46a-102.  The Complaint was filed on

January 24, 2006.

The plaintiffs' arguments as to why Crowley's unexhausted Title VII claims are

subject to some form of equitable waiver notwithstanding, Crowley has not put forward

any facts or law as to whether his unexhausted claims under the CFEPA are subject to

similar equitable considerations.  However, it appears as though these procedural

requirements are subject to equitable tolling under Connecticut law.  See Angelsea

Productions, Inc. v. Commission on Human Rights and Opportunities, 248 Conn. 392,

404 n. 9 (1999).  The defendants Motion to Dismiss Crowley's CFEPA claim in Count

Three is denied.[4]

**C.      Spector's Claims of Retaliation Under Title VII or Conn. Gen. Stat.
           46a-60(a)(4) in Count Three.**

Under Title VII, a plaintiff alleging retaliation must establish "participation in a

protected activity known to the defendant; an employment action disadvantaging the

---

[4]As neither party briefed the issue of equitable tolling specifically under state law, the
court's denial is without prejudice to the defendants' ability to raise this issue as a matter of law
on summary judgment.

plaintiff; and a causal connection between the protected activity and the adverse employment action."  Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998).  The Supreme Court recently pronounced that an adverse employment action must be "materially adverse", in that it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern & Sante Fe Railway Co. v. White, _ U.S. _, 126 S.Ct. 2405, 2415 (2006).  Material adversity must be the focus in determining whether an adverse employment action has occurred because "it is important to separate significant from trivial harms."  White, 126 S.Ct. at 2415.

The Supreme Court's decision in White altered the standard previously used by the Second Circuit, which defined an adverse employment action as a "materially adverse change in the terms and conditions of employment [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities."  Fairbrother v. Morrison, 412 F.2d 39, 56 (2d Cir. 2005).  Under that standard, prototypical examples of adverse employment actions included termination, demotion via a reduced wage, salary, or job title, a material loss of benefits, or significantly reduced responsibilities. Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006). (citation omitted).  White, however, found that standards such as these improperly limited Title VII's anti-retaliation provision to retaliatory actions that affect the terms and conditions of employment.  126 S.Ct. at 2412-13; see also Kessler v. Westchester Cty. Dep't. of Soc. Servs., 461 F.3d 199, 207 (2d Cir. 2006).  Courts must instead focus "upon the circumstances of the particular case" and whether those circumstances rise to the level of material adversity under an objective standard.  White, 126 S.Ct. at 2417.

-21-

Referring only to federal law, the defendants argue that Spector's retaliation claims pursuant to Title VII and the CFEPA do not state a claim for relief because Spector has not sufficiently alleged an adverse employment action, either generally or with respect to Spector's allegation that the defendants' retaliation came by way of creating a hostile work environment.  Spector responds that the Complaint sufficiently alleges adverse employment actions and a hostile work environment under the governing Second Circuit precedent.  The court will treat the defendants' two challenges to Spector's retaliation claims separately.

        1.      <u>Spector's Allegations of Adverse Employment Actions</u>

The basis of the defendants' challenge to Spector's alleged adverse employment actions is that, "the plaintiff does not plead that he was demoted, reduced in rank, dismissed, disciplined in a manner that resulted in a reduction in duties or status, or suspended," and that "[c]ourts have not expanded the definition of adverse employment actions to include events such as disciplinary filings [or] supervisor's reprimands." Memo in Support at 10 (citing <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 708 (5th Cir.), <u>cert</u>. <u>denied</u> 522 U.S. 932 (1997).  In essence, the defendants' arguments on this point appear centered on the fact that Spector does not allege an alteration in the terms and conditions of his employment.  This is precisely the type of inquiry that <u>White</u> rejects.

The court finds that Spector has sufficiently alleged adverse employment actions that could satisfy <u>White</u>'s test of material adversity.  Therefore, the Motion to Dismiss is denied.

        2.      <u>Spector's Allegations of a Hostile Work Environment</u>

As to Spector's claims that he suffered an adverse employment action when the defendants created a hostile work environment in retaliation for his protected activity, the defendants move to dismiss this claim because Spector does not allege that the defendants' conduct toward him occurred because of any protected status. Defendants' Reply at 4 (citing Harris v. Forklift Systems, 510 U.S. 17, 22 (1933)).  In response, Spector states that, while a claim of discrimination based on a hostile work environment must be based on the plaintiff's protected status under Harris, a claim of retaliation alleging a hostile work environment as the adverse employment action can be brought regardless of whether the plaintiff occupies some protected status. Plaintiff's Memo in Opposition at 17.

The court finds that Title VII imposes no obligation on Spector to allege that the hostile work environment he allegedly experienced occurred because of Spector's protected status.  White, not Harris, sets the standard for determining whether an employer's actions constitute an adverse employment action.  Spector has alleged facts sufficient to allow a reasonable inference that the defendants created a hostile work environment in retaliation for Spector's protected speech.  The court thus denies the Motion to Dismiss on this ground.

> **D.**    **Eleventh Amendment Bar on the Plaintiff's Claims Against NVCC Under 42 U.S.C. §§ 1983, 1985, and 1986**

The defendants urge that the Eleventh Amendment bars plaintiffs' claims for money damages and injunctive relief against the CTC Board of Trustees and NVCC under 42 U.S.C. §§ 1983, 1985, and 1986 in Counts One-A, Two, Four, and Five.  See Memo in Support at 17; see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S.

89, 99 (1984).  The plaintiffs do not contest that such a suit would be barred by the Eleventh Amendment, but argue that none of the claims in Counts One-A, Two, Four, and Five are brought against the CTC Board of Trustees or NVCC.

From the face of the Complaint, the plaintiffs' assertions do not seem entirely accurate.  In Count One-A, the heading of the section reads, in part, "Professor Crowley Against Defendants CTC Board of Trustees and NVCC."  Complaint at 27.  However, the allegations under Count One-A only mention the individual defendants, not the Board or NVCC.  See Complaint at ¶¶ 173-76.  In Count Two, there is no mention of either the CTC Board of Trustees or the NVCC.  See Complaint at 29, ¶¶ 183-86. Likewise, Count Four makes no reference to the CTC Board of Trustees or the NVCC. See Complaint at 30, ¶¶ 189-90.  Count Five again mentions the Board and NVCC in the count heading, Complaint at 30 ("Spector and Crowley Against Defendants CTC Board of Trustees, NVCC"), and generally states a claim for damages arising from the injuries set forth in ¶¶ 26 through 172 of the Complaint.

Rather than attempt to make sense of the plaintiffs' pleadings on this matter, the court will accept the plaintiffs' representations that they do not seek relief against the CTC Board of Trustees or NVCC in Counts One-A, Two, Four, and Five.  Thus, the Motion to Dismiss is denied as moot.

### E.     Plaintiffs' Claims for Money Damages under §§ 1983, 1985, and 1986 Against the Individual Defendants in their Official Capacities.

Again relying on the Eleventh Amendment, the defendants assert that the plaintiffs' claims for monetary damages from the defendants in their official capacities in Counts One-A, Two, Four, and Five under §§ 1983, 1985, and 1986 are barred.  See

-24-

Memo in Support at 17; <u>see also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 105 (1985).  The

plaintiffs respond that the Complaint only seeks money damages against the individual

defendants in their individual capacities or prospective relief against these defendants

in their official capacities.  As in Section D, the court will accept the plaintiffs' assertions

at face value, even though the Complaint is certainly not as clear on the relief sought

from the defendants in their official capacities as the plaintiffs contend.  <u>See, e.g.</u>

Complaint at ¶¶ 189-90 (seeking damages for injuries set forth in ¶¶ 26-172 without

specifying in which capacity these damages are sought).  Consequently, the court

denies the Motion to Dismiss as moot.

###    F.    Plaintiffs' Conspiracy Claims Under 42 U.S.C. §§ 1985 and 1986

To state a claim for relief under 42 U.S.C. § 1985(3), a plaintiff must allege "(1) a

conspiracy (2) for the purpose of depriving a person or class of persons of the equal

protection of laws, or the equal privileges and immunities under the laws; (3) an overt

act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or

property, or a deprivation of a right or privilege of a citizen of the United States."

<u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999).  The alleged conspiracy "need not

be shown by proof of an explicit agreement but can be established by showing that the

parties have a tacit understanding to carry out the prohibited conduct."  <u>LeBlanc-</u>

<u>Sternberg v. Fletcher</u>, 67 F.3d 412, 427 (2d Cir. 1995) (quotations omitted).  Put

differently, the plaintiff must establish a factual basis upon which to infer that the

defendants had a "meeting of the minds" to achieve the alleged wrong.  <u>Webb v.</u>

<u>Goord</u>, 340 F.3d 105, 110 (2d Cir. 2003).  Therefore, "a complaint containing only

conclusory, vague, or general allegations of conspiracy to deprive a person of

constitutional rights cannot withstand a motion to dismiss." <u>Boddie v. Schnieder</u>, 105

F.3d 857, 862 (2d Cir. 1997).

      In their Motion to Dismiss, the defendants assert that the plaintiffs do not

sufficiently allege conspiracy claims and that, in the alternative, the plaintiffs' conspiracy

claims are barred by the "intracorporate doctrine."  The court rejects both of these

contentions.

1.    <u>Sufficiency of the Conspiracy Allegations</u>

      In Paragraphs One, Three, and Four of the Complaint, the plaintiffs set forth the

general tenor of the alleged conspiracy to deprive them of constitutional rights.  The

Complaint alleges, for example, that NVCC, through its law enforcement agents, "acted

with force, intimidation, and the threat of criminal process against Professor Spector

and Professor Crowley . . . to suppress protected and lawful opposition to its unlawful

practices."  Complaint at ¶ 3.  The Complaint then sets forth a host of factual allegations

as to how the actions by the defendants were reasonably related in seeking to deprive

the plaintiffs of their rights.  <u>See</u> Complaint at ¶¶ 19, 125-140, 143-150, and 158.  In

light of these copious factual claims, the court cannot conclude that there is no set of

facts upon which the plaintiffs will be able to establish a "meeting of the minds" between

the defendants for the purpose of carrying out the alleged prohibited conduct.  The

Motion to Dismiss is therefore denied on this ground.

2.    <u>Applicability of the Intracorporate Doctrine</u>

      The "intracorporate doctrine," as developed in this circuit, embodies the principle

that, under § 1985, "there is no conspiracy if the conspiratorial conduct challenged is

essentially a single act by a single corporation acting exclusively through its own

-26-

directors, officers, and employees, each acting within the scope of his employment."
Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978) (discussing Girard v. 94th and
Fifth Avenue Corp., 530 F.2d 66 (2d Cir. 1976).  District courts within this circuit have
extended the intracorporate doctrine to conspiracies between a public entity and its
employees.  See, e.g., Quinn v. Nassau Cty Police Dep't., 53 F.Supp.2d 347, 360
(E.D.N.Y. 1999).  The doctrine does not apply, however, when the individual defendants
are alleged to have been "motivated by any independent personal stake in achieving
the [organization's] objective."  Girard, 530 F.2d at 72; see also, Roniger v. McCall, 22
F.Supp.2d 156, 168 (S.D.N.Y. 1998).

   According to the defendant, the intracorporate doctrine bars the plaintiffs' claims
because all of the defendants are agents of a single agency, NVCC, and none of the
defendants are alleged to have acted in anything other than within the scope of their
normal duties.  The court does not agree.  For example, the Complaint does not allege
that the defendants acted within the scope of their duties to achieve the alleged
conspiracy.  It would be premature for the court to conclude that the plaintiffs could
prove no set of facts which tend to establish that some of the defendants were
motivated by personal motives.  See Roniger, 22 F.Supp.2d at 169.  It is also unclear at
this stage in the litigation whether various NVCC departments relevant to this action,
such as Public Safety or the Business Department, should be treated as one entity or
separate entities under Girard.  See Girard, 530 F.2d at 71 (discussing Rackin v.
University of Pennsylvania, 386 F.Supp. 992 (E.D.Pa. 1974).  If these departments are
effectively separate entities, then the intracorporate doctrine cannot apply.  As such, the
court denies the Motion to Dismiss.

-27-

G.      **Statute of Limitations as to Plaintiffs' Denial of Due Process and Abuse of Criminal Process Claims Under 42 U.S.C. §§ 1983, 1985, and 1986.**

The defendants next argue that the plaintiffs' Denial of Due Process and Abuse of Criminal Process claims under 42 U.S.C. §§ 1983, 1985, and 1986 in Counts Two and Five of the Complaint are barred by the applicable three-year statute of limitations under § 1983 and the one-year statute of limitations under §§ 1985 and 1986 in Connecticut.  The defendants challenge the plaintiffs' due process and abuse of criminal process claims to the extent that they are based on the investigation of Spector's behavior during the November 11, 2001 traffic stop, the alleged seizure of Crowley and Spector's classrooms by Connole, Rimick, and Gorishti, and Connole's alleged statements to his officers that he wanted the plaintiffs arrested.  All the events relevant to this series of events, in the defendants' view, occurred in 2001 and 2002, the last event being Connole's November 18, 2002 statement that he wanted the plaintiffs arrested.  Since the plaintiffs did not file suit in this matter until January 24, 2006, all of their claims fall outside even the three year statute of limitations period for § 1983 claims.

To counter the defendants' challenge, the plaintiffs contend that the statutes of limitations do not foreclose their claims because the Complaint is based on a "continuing violation theory of the case."  Opposition at 30.  The plaintiffs also argue, pursuant to "the breach of contract equitable estoppel doctrine," that the defendants' breach of the April 15, 2003 Agreement with Crowley brings all facts claims contained in Crowley's CHRO complaint and which arose subsequent to the defendants' breach of

the April 15, 2003 Agreement within the purview of this court.  Id. at 30-31 and 30, n.

16.  The court addresses these arguments in turn.

> 1.    Continuing Violation Doctrine

The plaintiffs' continuing violation theory is based on the Supreme Court's

decision in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  In

determining when a Title VII plaintiff could file a charge with the EEOC, the court held

that, "the statute precludes recovery for discrete acts of discrimination or retaliation that

occur outside the statutory time period," but that, when considering a hostile work

environment claim, events that fall outside the statutory time period may be alleged "so

long as an act contributing to that hostile environment takes place within the statutory

period."  Morgan, 536 U.S. at 105.

In drawing this bright-line distinction between discrete acts and hostile

environment claims, the Court noted that "discrete discriminatory acts are not

actionable if time barred, even when they are related to acts alleged in timely filed

charges."  Id. at 113.  Discrete acts include, at a minimum, "termination, failure to

promote, denial of transfer, or refusal to hire."  Id. at 114.  Hostile work environment

claims stand on different footing because they are necessarily "composed of a series of

separate acts that collectively constitute one unlawful employment practice."  Id. at 117

(quotations omitted).  An employer may therefore be held liable for all acts that

comprise the single unlawful employment practice if at least one of those acts occurred

during the statutory period.  Id. at 118.

The Second Circuit has yet to address whether Morgan's Title VII analysis

applies to claims under § 1983, § 1985, or § 1986.  However, the Third Circuit has

applied Morgan to claims under § 1983, § 1985, and § 1986, reasoning that "the

distinction between continuing violations and discrete acts is not an artifact of Title VII,

but is rather a generic feature of federal employment law."  O'Connor v. City of Newark,

440 F.3d 125, 128 (3rd Cir. 2006); see also id. at 128-29 ("the [Morgan] Court did

nothing more than to restate, in the employment discrimination context, the common-

sense proposition that an applicable statute of limitations begins to run at the time the

claim accrues, and that time-barred claims cannot be resurrected by being aggregated

and labeled continuing violations.")  Thus, the Third Circuit joined Sixth, Seventh, and

Ninth Circuits to the extent that these circuits hold that, "the principles in Morgan apply

with equal force to § 1983 claims.  Id. at 128.  As both parties appear to conclude that

Morgan governs the plaintiffs claims under §§ 1983, 1985, and 1986, the court will also

proceed under this conclusion.

      Looking to the case at bar, Morgan will not salvage the plaintiffs' due process

and abuse of criminal process claims.  The court notes that, in defending these claims,

the plaintiffs never identify the factual allegations upon which these counts rely.

Instead, the plaintiffs attempt to shoehorn their due process and abuse of criminal

process into the hostile work environment framework the plaintiffs use to toll their Title

VII retaliation claims.  This is telling because, as the defendants point out, the only

events relevant to Counts Two and Five appear to have occurred in 2001 and 2002.

Indeed, Count Two, which addresses the abuse of criminal process charge specifically

alleges that:

      Individual Defendants Sanders, Holmes, and DuBois directed the authority of law
      enforcement agents, by and through individual Defendants Connole and Rimick,
      with the intent to threaten and intimidate, for the purpose of suppressing and

burdening Plaintiff Crowley's civil rights under the First Amendment.

Complaint at ¶ 185.  In the court's view, none of the events relevant to this claim took

place after 2002.

Thus, while the factual allegations that support the plaintiffs' claims for due

process and abuse of criminal process may be relevant to their hostile work

environment claim, and while events pertinent to the hostile work environment claim

may have occurred within the statutory period, none of the facts underlying the due

process and abuse of criminal process counts appears to have occurred during the

statutory periods.  Furthermore, the plaintiffs have brought their due process and abuse

of criminal process separately from their Title VII retaliation claims.  This necessarily

requires the court to treat them as discrete acts, rather than as part of any hostile work

environment theory.  Under Morgan, then, these counts cannot, as a matter of law,

satisfy the "continuing violations" theory.  Morgan, 536 U.S. at 117 (holding that an act

contributing to the claim must fall within the statutory period for the claim to be

actionable).

2.     <u>Breach of Contract Equitable Estoppel</u>

The court's ruling that the plaintiffs may not rely on a continuing violations theory

under Counts Two and Five is not fatal.  As with the plaintiffs' arguments for an

equitable lifting of Title VII's exhaustion requirement, the plaintiffs assert that the

defendants' breach of the April 15, 2003 Agreement should also toll the statutory period

for their § 1983, § 1985, and § 1986 claims.  Because the court has incorporated the

Morgan analysis into its consideration of its claims, it also holds that Counts Two and

Five are subject to equitable tolling, waiver, and estoppel.  See Morgan, 536 U.S. at

121 (citing <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385 (1982) and holding that the

Title VII filing period is subject to waiver, estoppel, and equitable tolling when equity so

requires).  Thus, for the reasons stated above, Ruling at 14-19, the court concludes that

the plaintiffs may still prove a facts entitling them to an equitable exemption from the

relevant statutory filing periods.  The Motion to Dismiss Counts Two and Five is

therefore denied.

### H.    Private Right of Action under Article First,  §§ 3 and 20 of the Connecticut Constitution

In Counts One-C and Four of the Complaint, the plaintiffs allege, respectively,

violations of the free exercise of religion under Article First, Section Three of the

Connecticut Constitution, and the equal protection of the laws under Article First,

Section Twenty of the Connecticut Constitution.  The defendants contend that these

provisions of the Connecticut Constitution do not provide private causes of action for

money damages.  The court agrees.  This court has previously held that Article First,

Section Twenty of the Connecticut Constitution does not provide a private cause of

action.  <u>Ward v. Housatonic Area Reg'l Transit Dist.</u>, 154 F.Supp.2d 339, 356 (D.Conn.

2001) (citing <u>Kelley Property Development, Inc. v. Lebanon</u>, 226 Conn. 314, 339

(1993)).  For the reasons stated by this court in <u>Ward</u>, the Motion to Dismiss is granted

as to Count Four.

The plaintiffs are also correct that the Connecticut Supreme Court has refused to

recognize causes of action under the state constitution where the legislature has

provided a reasonable statutory remedy.  <u>Kelley Property Development</u>, 226 Conn. at

339.  In Count One-C, the plaintiffs assert relief under both Section Three and Sections

-32-

31-51q and 52-571b of the Connecticut General Statutes.  As the defendants argue, and the plaintiffs do not contest, Section 31-51q provides a adequate statutory remedy for employees disciplined or discharged for exercising those rights secured by Section Three of Article First.  <u>See</u>  Conn. Gen. Stat. § 31-51q.  The Motion to Dismiss is therefore granted to the extent that Count One-C of the Complaint seeks to assert Article First, Section Three as a private cause of action.

**I.**      **Plaintiffs' Standing to State a Claim Under Conn. Gen. Stat. § 5-141d**

Conn. Gen. Stat. § 5-141d provides, in pertinent part:

> The state shall . . . indemnify any state officer or employee . . . from financial loss and expense arising out of any claim, demand, suit, or judgment . . . if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment.

Relying on this provision, the plaintiffs assert that the CTC Board of Trustees and NVCC are legally liable to pay those damages assessed to the individual defendants.  The defendants argue that nothing in the statute, or the law of Connecticut, appears to give the plaintiff standing to make such a claim.  Because the plaintiffs do not defend this claim in any of their submissions, and Connecticut law clearly vests the right of indemnification with the employees against whom a suit is brought, <u>Ann St. George v. Gordon</u>, 264 Conn. 538, 546 (2003), the court grants the Motion to Dismiss.

**J.**      **Connole, Rimick, and Gorishti's Invocation of the Absolute Testimonial Privilege Against the Plaintiffs' Claims of Defamation and Intentional Infliction of Emotional Distress.**

In Counts Seven and Eight, the plaintiffs bring claims of defamation and intentional infliction of emotional distress against Connole, Rimick, and Gorishti, among

others.  The claims are based, in part, on incident reports Rimick and Gorishti filed in connection with Spector's traffic stop and which Connole communicated to the workplace violence and criminal investigations of Spector's conduct during that traffic stop.  According to the defendants, the three officers are entitled to an absolute privilege that would immunize them from damages for these statements, even if they were defamatory.  The court disagrees.

It is black letter law in Connecticut that, "there is an absolute privilege for statements made in judicial proceedings."  Petyan v. Ellis, 200 Conn. 243, 245 (1986).  However, Connecticut has not precisely defined the proceedings which may be considered "judicial" for purposes of the testimonial privilege.  Id. at 246.  At a minimum, the privilege extends to "any hearing before a tribunal which performs a judicial function" and to those proceedings which may be considered "quasi-judicial in character."  Id.  A proceeding is quasi-judicial to the extent that the tribunals "have powers of discretion in applying the law to the facts."  Id.  Factors a reviewing court is to consider in determining whether a proceeding is quasi-judicial in nature also include whether the entity in question has power to "make binding orders and judgments, affect personal property rights of private persons, examine witnesses, and hear the litigation of the issues on a hearing; and enforce decision or impose penalties."  Craig v. Stafford Construction, Inc., 271 Conn. 78, 85 (1991) (quotations omitted).

The court denies the defendants' Motion to Dismiss in this regard because there is no way to determine from the pleadings whether the workplace violence investigation is a quasi-judicial proceeding under the factors outlined in Petyan and Craig.  It is also not clear from the pleadings whether the incident reports prepared by Gorishti and

-34-

Rimick were written specifically for the workplace violence investigation, or if such incident reports are prepared regardless of the possibility of an administrative investigation.  If the latter, it would seem difficult to conclude that the incident reports were made to a judicial or quasi-judicial proceeding.

Further, it is not at all clear that the plaintiffs seek relief for any statements Gorishti, Connole, or Rimick made during the course of a criminal investigation.  The plaintiffs certainly do not allege that any statements were made by these defendants during the course of a judicial proceeding connected with a criminal investigation, and the court sees no independent reason to infer otherwise.  The Motion to Dismiss as to the comments by Gorishti, Connole, and Rimick is therefore denied.

## IV.   CONCLUSION

For the foregoing reasons, the Defendants Motion to Dismiss (Doc. No. 27) is DENIED in part and GRANTED in part.  It is GRANTED with respect to the plaintiffs' claim under Article First, § 3 of the Connecticut Constitution in Count One-C; the plaintiffs' claim under Article First, § 20 of the Connecticut Constitution in Count Four; and Count Nine.  It is DENIED for all other claims.


**SO ORDERED**

Dated this 29th day of November, 2006 at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge